## JARVIS B. SMITH *vs.* WILBUR WELLS & Trustee.

A testator, the only son of his mother by her first marriage, who would have been his sole heir at law if he had died intestate, bequeathed to her all his property, "to hold the same to her and her heirs and assigns, to be for the sole use of herself, her heirs, executors, administrators and assigns:" The mother was wife of a second husband, but lived separate from him, and had no support from any source besides her own labor; her husband being intemperate, and not of ordinary capacity or prudence in the management of property. *Held,* that the mother took the property to her separate use, to the exclusion of the husband and his creditors.

DANIEL CLAFLIN, who was summoned as trustee of Wells, the principal defendant, made a sworn answer to the following effect: That he was executor of the last will of Ezra A. Fisher, late of Attleborough, which was made on the 23d of October 1836, and in which was this clause: " I give and bequeath to my honored mother all my property that is left after paying my just debts and funeral expenses; to hold the same to her and her heirs and assigns, to be for the sole use of herself, her heirs, executors, administrators and assigns : " That said Claflin duly proved the said will in September 1837, gave bond, and entered upon the duties of his office soon after the decease of the testator, and had since, under the advice of counsel, appropriated part of the proceeds of the testator's estate to the separate maintenance of the legatee named in said will, by vesting it in real estate which is held by a trustee for her use : That said Claflin had received none of the income or profits of said real estate, and knew not who had, but presumed the same had been applied to the separate maintenance of said legatee : That he had in his hands, at the time of the service of the writ in this case, dividends on bank stock owned by the testator : That he (said Claflin) was well acquainted with the circumstances of the testator, the said legatee and her husband, at the date of said will : That she, at that time, lived in Attleborough, and the said Wells, her husband, in Rehoboth, and that they had never since lived together, except for a short time : That said Wells did not, at that time, " contribute any thing of consequence " to the support of his said wife, and never since had ; that he was of intemperate habits, and not of ordinary capacity or prudence in the management of property : That

his said wife had no separate property, and no means of living besides her personal labor : That all these facts were known to the testator ; and that he, a short time before his death, being sick at said Claflin's house, told said Claflin that he was desirous his property should go to his mother, for her separate use, and not be under the control of her husband ; and that said Claflin thereupon told said testator that, in order to effect this, he must make a will : That the testator requested said Claflin to get some person to draw his will for this object, and that said Claflin went for a scrivener, who came, and was expressly directed to frame the will so as to give the property to the sole use of the testator's mother, and so as to prevent the control thereof by her husband : That the scrivener told the testator that he had so drawn the will ; whereupon the testator executed it, and lived only a week afterwards : That the testator was the only child of said legatee, who would have been his sole heir at law, if he had made no will.

*Pratt,* for the plaintiff. That part of the answer, which states the intention and conversation of the testator, is not to be received or considered by the court ; but the will is to be construed without explanation by parol evidence, which is admissible only when there is an ambiguity as to the nature of the thing devised, or as to the identity of the party. *Thomas* v. *Thomas,* 6 T. R. 671. *Richards* v. *Dutch,* 8 Mass. 506. *Sargent* v. *Towne,* 10 Mass. 303. *Mann* v. *Mann,* 14 Johns. 1.

The effect of the will, construed by its terms, is to vest th property in the husband of the legatee, and make it attachable by his creditors. *Clapp* v. *Stoughton,* 10 Pick. 469. *Hayward* v. *Hayward,* and *Wheeler* v. *Bowen,* 20 Pick. 517, 563. Toller on Executors, 225. Rev. Sts. *c.* 109, §§ 4, 62. The executor had no authority to invest the testator's money ; and if he has sold any of the property, he is answerable for it in this process. The bequest was absolute ; and in such case no trustee is necessary, and the executor does not become trustee.

The claim to hold property for the use of a wife, separate from her husband, is against common right, and the instrument un der which such claim is made must clearly speak the intention that it should be so. The usual expression, in cases where it

has been held in chancery that property belongs exclusively to the wife, is found to be, to her separate use, exclusive of her husband, and not subject to his debts or control. See *Brown* v *Clark*, 3 Ves. 166. *Roberts* v. *Spicer*, 5 Mad. R. 491. *Jacobs* v *Amyatt*, 1 Mad. R. 376, *note*.

*Daggett*, for the trustee. The intention of the testator to give his property for the exclusive use of his mother is manifest from the terms of the will. The words " for the sole use of herself, her heirs," &c., are superfluous, if such was not his intention; and the court will, if possible, give effect to all the words. *Dawes* v. *Swan*, 4 Mass. 215. Besides; they are words which have been often held sufficient to express a limitation to the wife; nothing more being necessary, than that there be a clear indication of such an intention. *Ex parte Ray*, 1 Mad. R. 199, 207. *Fettiplace* v. *Gorges*, and *Lee* v. *Prieaux*, 3 Bro. C. C. 8, 381. 2 Roper Husb. & Wife, 158 & *seq*. 2 Roper on Leg. (1st Amer. ed.) 295. *Carroll* v. *Lee*, 3 Gill & Johns. 504. And it is not necessary, in order to give effect to such intention, that a trustee should be interposed. *Rollfe* v. *Budder*, Bunb. 187. Reeve Dom. Rel. 162, 163. Clancy Husb. & Wife, (1st Amer. ed.) 256, 257. *Davison* v. *Atkinson*, 5 T. R. 434. *Dorr* v. *Wainwright*, 13 Pick. 328. 3 Gill & Johns and 2 Roper on Leg. *ubi sup*.

The intention of the testator is further manifest from the cir cumstances under which he made his will, and the relation which he sustained to the legatee; which circumstances may be shown by extrinsic evidence. *Sargent* v. *Towne*, 10 Mass. 303. Greenl. on Ev. §§ 287, 289.

The cases cited by the plaintiff from 10 and 20 Pick. can be made to bear on the case at bar only by *assuming* that the property in question is not the separate property of the wife of the principal defendant.

SHAW, C. J. The question is, whether Claflin, as the executor of the will of Fisher, can be charged as the trustee of Wells, the husband of the legatee; and this depends on the construction of the will. Mrs. Wells, wife of the principal defendant by her second marriage, was the mother of the testator, who was

her son by a former marriage, and her only child. She was therefore his sole heir at law, and would have taken his property by inheritance, had he died intestate. Under these circumstances he made his will, by which, subject to his own debts, he gave all his property to his mother, "to have and to hold the same, to her, her heirs and assigns, to be for the sole use of herself, her heirs, executors, administrators and assigns." The court are of opinion that this was a gift to the separate use of the wife as a feme covert, to the exclusion of the husband and his creditors, as much as if more express words of exclusion had been used. We lay no stress on the statement made, in the trustee's answer, of his personal knowledge as to the intent of the testator ; and we think it would not be received as affording any aid in the construction of this will, whenever the question . should arise at law or in equity. The intent of the testator is certainly to govern ; but it is the intent expressed by the will, or fairly collected from it, and from the circumstances under which it was made. *Tucker* v. *Seaman's Aid Society,* (*ante,* 205.) But the fact, that the legatee was the mother of the testator, and his only heir, and that she had a husband living, are circumstances which may be legitimately resorted to, and which tend to give effect to the words, " for her sole use." And perhaps the fact of her living separate from her husband at the time may be considered as a circumstance of the same tendency, though not necessary in the present case. The words " sole use," in a deed, bill of sale, or even a will, after an absolute gift to a man or to an unmarried woman, might, under some circumstances, be regarded as one of those pleonastic expressions, so common in conveyancing, which do not affect the construction. But when the gift is by a son to a mother who is the wife of a man not his father, the words " to her sole use " come to have a clear significance of his intent to make a provision for her personal benefit. And the fact of making a will, by means of which he could give it to her separate use, when she would have taken the same property by inheritance, but by a title which would enable the husband and his creditors to appropriate it, is strong corroborative proof of the intent of the testator to give the property to his mother, for her separate use. *Trustee discharged.*